**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
JENNIFER MCMURRAY, *for herself and on behalf of all*
 *others similarly situated,*

                                                                    **16 CV 6466**

                                    *Plaintiff,*                    **CLASS ACTION**
                                                                    **COMPLAINT**

                    -against-


BREAKING GROUND HOUSING DEVELOPMENT FUND
CORPORATION, a/k/a COMMON GROUND COMMUNITY
HOUSING DEVELOPMENT FUND CORPORATION, INC.,

                                    *Defendant.*
-------------------------------------------------------------------------X

Plaintiff Jennifer McMurray, for herself and on behalf of all others similarly situated, by

her counsel, The Harman Firm, LLP, alleges for her complaint against Defendant Breaking

Ground Housing Development Fund Corporation, a/k/a Common Ground Community Housing

Development Fund Corporation, Inc.:

## NATURE OF THE ACTION

1.      Plaintiff Jennifer McMurray ("Plaintiff" or "Ms. McMurray") seeks damages and

costs against Defendant Breaking Ground Housing Development Fund Corporation, a/k/a

Common Ground Community Housing Development Fund Corporation, Inc. ("Defendant" or

"Breaking Ground"), for subjecting her to a hostile work environment and ultimately terminating

her employment based on her race (Asian), in violation of § 1981 of the Civil Rights Act of 1866

("Section 1981") and the New York City Human Rights Law ("NYCHRL").

2.      Plaintiff also seeks damages and costs against Defendant for discriminating

against her based on her disability by subjecting her to a hostile work environment, failing to

1

engage in the mandatory interactive process to identify a reasonable accommodation, and ultimately terminating her employment, in violation of the NYCHRL.

3.      Plaintiff also seeks damages and costs against Defendant for retaliating against her for her complaints of race and disability discrimination by, among other things, subjecting her to further discrimination and harassment and ultimately terminating her employment, in violation of the NYCHRL.

4.      Plaintiff, for herself and on behalf of all others similarly situated, also seeks damages and costs against Defendant to recover deducted contributions owed to employee benefit plans, in violation of the Employee Retirement Investment Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*, namely, 29 U.S.C. §§ 1104, 1106.

5.      Plaintiff, for herself and on behalf of all others similarly situated, also seeks damages and costs against Defendant for conversion, in violation of the New York State common law.

6.      Plaintiff also seeks damages and costs against Defendant for breach of contract, in violation of the New York State common law.

## JURISDICTION AND VENUE

7.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendant violated Plaintiff's rights under Section 1981 and ERISA.

8.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL and common law, as the federal claims arise from the same set of operative facts as the state and local claims and form part of the same case or controversy.

9.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to the claims occurred within this District.

### TRIAL BY JURY

10.    Plaintiff respectfully requests a trial before a jury.

### PARTIES

11.    At all times relevant hereto, Plaintiff was and is a resident of New York County in the State of New York.

12.    Upon information and belief, at all times relevant hereto, Defendant was and is a not-for-profit corporation organized under the laws of the State of New York with its headquarters located at 505 Eighth Avenue, 5th Floor, New York, NY, 10018.

### STATEMENT OF FACTS

13.    On August 10, 2009, Breaking Ground hired Ms. McMurray as a Senior Financial Reporting & Analysis Accountant in the Finance Department, reporting to Janet Ross.

14.    Ms. McMurray's job duties included financial reporting and analysis, budgeting, and auditing for Not-For-Profit Operations.

15.    Ms. McMurray quickly established herself as a dedicated, motivated employee, and in recognition of her capabilities, Breaking Ground expanded her job duties to include performing treasury functions, assisting junior staff with accounting processes, performing payroll analysis, and other Controller and Assistant Controller duties.

16.    Throughout her employment, Ms. McMurray consistently received positive performance reviews and fulfilled all of her job responsibilities.

17.     Between approximately August 2009 and early 2012, Ms. McMurray's office was located on the 15th floor of Breaking Ground's office building, in the Finance Department.

18.     In spring 2012, the Finance Department moved from the 15th to the 5th floor, where there was ongoing construction.

19.     Due to daily exposure to airborne debris from the construction, Ms. McMurray developed symptoms including chest congestion, mucus accumulation, bloody mucus, difficulty breathing, chest pains and tightness, persistent cough, eye irritation and burning, throat irritation, dry throat, skin irritation, rash, headache, fatigue, and feelings of anxiety and panic.  Her symptoms became so severe that she began needing to wear a surgical mask to work.

20.     Ms. McMurray informed Breaking Ground of her symptoms and was allowed to take time off of work to recover.

21.     After a few days away from the 5th floor, Ms. McMurray's health improved; however, upon returning to work on the 5th floor, she quickly became sick again.

22.     Upon receipt of a doctor's note, Breaking Ground allowed Ms. McMurray to relocate to the 12th floor.

23.     In summer 2012, Breaking Ground reassigned Ms. McMurray to report to Jean Smith-Gilmore and moved her office back to the 5th floor, where she again became sick.

24.     In September 2012, after Ms. McMurray notified Breaking Ground of the resurgence of her symptoms, Breaking Ground again required her to submit a doctor's note, but allowed her to move back to the 12th floor.

25.     In July 2013, Breaking Ground hired a new Controller, Jill Murphy, and reassigned Ms. McMurray to report to her.

26.     Throughout Ms. McMurray's time reporting to Ms. Murphy, Ms. Murphy discriminated against Ms. McMurray based on her race.

27.     For example, she repeatedly mocked Ms. McMurray's Asian accent and pulled her eyes apart, making the racist "slanty-eye" gesture, while speaking to her.

28.     Ms. Murphy's conduct humiliated Ms. McMurray and made it difficult for her to perform her job.

29.     During their first meeting, Ms. McMurray informed Ms. Murphy that she could not work on the 5th floor due to a medical condition.

30.     Ms. Murphy immediately expressed hostility towards Ms. McMurray because of Ms. McMurray's disability and her request for an accommodation.

31.     For example, Ms. Murphy assigned Ms. McMurray the new responsibility of bringing daily paperwork in person to the Finance Department on the 5th floor.  Ms. McMurray complied with Ms. Murphy's instructions, but became sick each time she was on the 5th floor.  Consequently, Ms. McMurray notified Ms. Murphy that she would use the interoffice mail system to bring down the paperwork, rather than hand-delivering it each day.

32.     Ms. Murphy told Ms. McMurray that she was not happy that Ms. McMurray was "incapable of doing what [she] asked of [her]," prohibited Ms. McMurray from using interoffice mail, and ordered her to deliver documents in person.

33.     Ms. Murphy offered no explanation for her directive, but continued to allow other employees to use interoffice mail.

34.     In May 2015, Ms. Murphy required Ms. McMurray to attend a meeting on the 5th floor, though she knew that Ms. McMurray's previous supervisors had always met with her on the 12th floor because of her disability.

35.     During the meeting, Ms. Murphy required Ms. McMurray to make copies at the copy machine in the 5th floor hallway.

36.     While Ms. McMurray was making the copies, she began to experience coughing, burning eyes, skin irritation, and chest tightening.  When she returned to Ms. Murphy's office, Ms. McMurray informed Ms. Murphy of her symptoms and asked to move the meeting to the 12th floor to avoid further exposure.

37.     Ms. Murphy refused to accommodate Ms. McMurray, telling her, "You should be working on this floor like everyone else."

38.     Ms. Murphy frequently reassigned Ms. McMurray's job duties to Vivian Liu, who is substantially younger than Ms. McMurray and who does not suffer from the same illnesses.

39.     When Ms. McMurray complained, Ms. Murphy stated that Ms. McMurray was too "slow" to get the jobs done for her and she needed someone like Ms. Liu, who was younger, healthier, and could "get the jobs done for her faster."

40.     In 2015, Ms. Murphy issued Ms. McMurray a negative performance review and aggressively criticized her job performance.  Ms. Murphy alleged that Ms. McMurray took "too long" to do her job, was incapable of fulfilling her responsibilities because she is "older" and has "a weaker immune system," and was not "useful" because she had to work on the 12th floor.

41.     Ms. McMurray had never received a negative performance review from any of her former supervisors.

42.     In December 2015, Ms. Murphy organized the Finance Department Christmas and Holiday Party with racially segregated tables: one table exclusively for white employees, another for minority employees.

43.     Minority employees, including Ms. McMurray, were deeply offended by the overt discrimination, and Ms. McMurray complained during the party to Kevin Moran, Breaking Ground's CFO.

44.     However, Breaking Ground did nothing to address the obvious discrimination.

45.     Instead, immediately after Ms. McMurray's complaint, Ms. Murphy retaliated against Ms. McMurray by demanding that Ms. McMurray perform clerical tasks that were typically assigned to interns and temporary employees, such as stuffing hundreds of monthly rent invoices into envelopes and stamping envelopes using the machine on the 5th floor.

46.     On March 17, 2016, Ms. McMurray felt ill and needed to see her doctor.

47.     When Ms. McMurray asked Ms. Murphy for permission to go to the doctor, Breaking Ground's Human Resources (HR) Department immediately called Ms. McMurray to a meeting, in which Breaking Ground terminated Ms. McMurray's employment.

48.     Neither of the individuals involved — Joseph Gonzalez, Assistant VP of HR, and Myrna Brown, Director of HR Operations — provided an explanation for the decision.

49.     Mr. Gonzalez and Ms. Brown presented Ms. McMurray with a waiver and release of claims to sign.  When Ms. McMurray refused to sign, Mr. Gonzalez and Ms. Brown threatened her, saying that she would not be allowed to say goodbye to her coworkers or use the elevator to take her boxes down to the lobby from the 12th floor.

50.     In addition, during Ms. McMurray's employment at Breaking Ground, Breaking Ground regularly deducted portions of her and other employees' wages to deposit in retirement, Flexible Spending, dependent care, and transit accounts.

51.     Frequently, however, the amount deposited was substantially less than the amount deducted, as confirmed by several audits.

52.     In January 2011, Ms. McMurray complained about the discrepancies to HR.  In February 2011, Breaking Ground agreed to deposit the difference plus lost earnings to her retirement account, but has not done so to date, despite Ms. McMurray's multiple inquiries.

53.     Breaking Ground has also failed repeatedly to reimburse Ms. McMurray for her medical expenses, which it agreed to do.

54.     In May 2016, more than six (6) weeks after Breaking Ground terminated Ms. McMurray's employment, Principal Financial Group, Breaking Ground's Retirement Plan Administrator, informed her that she was prohibited from a distribution and roll-over of her retirement fund because Breaking Ground failed to inform Principal Financial Group of her termination, which should have happened within two (2) weeks of the event date (March 17, 2016).

55.     Four (4) months after her termination, Breaking Ground continues to ignore its obligation and is therefore in violation of the retirement plan provisions of Ms. McMurray's employment agreement.

56.     On March 25, 2016, Breaking Ground issued Ms. McMurray's final check without including all of her accrued vacation pay.

57.     Shortly after, Ms. McMurray complained to Breaking Ground about its underpayment; however, Breaking Ground still has not paid Ms. McMurray for her accrued vacation time.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), on behalf of all current and former employees of Defendant from whose paychecks Defendant withheld wages and failed to completely remit to:

a.      Retirement accounts;

b.      Flexible spending accounts;

c.      Dependent care accounts; and

d.      Transit accounts.

59.     While the exact number of Class members is presently unknown, it is estimated that there are hundreds of members in the Class.

60.     The group of potential Class members is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to Rule 23.

61.     Despite the numerical size of the Class, the identities of the Class members can be ascertained through Defendant's payroll records.

62.     Plaintiff and her counsel do not anticipate any difficulties in the management of this action as a class action.

63.     Plaintiff is committed to vigorous prosecution of this action, will adequately represent the purported Class in this action, and has retained competent counsel experienced in class action litigation.

64.     Plaintiff is a Class member and has no interest antagonistic to or in conflict with other Class members.

65.     This action raises numerous questions of law and fact which are of common and general interest to the Class members, including:

a.   Whether Defendant knew, or should have known, that withholdings were not being remitted in the correct accounts;

b.   Whether the accounts in question are covered under ERISA;

c.  Whether the withheld funds were used by Defendant, and for what;

d.  Whether Defendant directed the inappropriate withholdings;

e.  Which individual(s) at Defendant was responsible for ensuring compliance with ERISA;

f.  Which individual(s) at Defendant was responsible for the transactions in question.

66.     The claims or defenses of the represented parties are typical of the claims or defenses of the Class.

67.     Plaintiff has the same interests as the other Class members in prosecuting the claims against Defendant.

68.     Plaintiff and all the members of the Class sustained damages as a result of Defendant's wrongful conduct.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

70.     Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class members to redress the wrongs done to them individually.

71.     Plaintiff and The Harman Firm, LLP will fairly and adequately assert and protect the interests of the Class.

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of § 1981

72.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73.     Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

74.     Defendant discriminated against Plaintiff by subjecting her to hostile, discriminatory treatment and offensive, racially motivated comments that were so severe and pervasive that they altered the terms, conditions, or privileges of her employment.

75.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

76.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**SECOND CAUSE OF ACTION**
**Unlawful Termination in Violation of § 1981**

77.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 76 with the same force as though separately alleged herein.

78.     Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

79.     Defendant unlawfully terminated Plaintiff because of her race.

80.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

81.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Section 1981

82.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 81 with the same force as though separately alleged herein.

83.     Section 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

84.     Plaintiff properly complained to Defendant about racial discriminators' comments and conduct.

85.     Defendant retaliated against Plaintiff by, *inter alia,* subjecting her to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating her employment.

86.     As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

87.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

88.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89.     The NYCHRL prohibits employers from, among other things, discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race and/or actual or perceived disability.

90.     Defendant discriminated against Plaintiff based on her race and disability by subjecting her to hostile, discriminatory treatment and offensive comments that were so severe and pervasive that they altered the terms, conditions, or privileges of her employment.

91.     As a direct and proximate consequence of Defendant's race and disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

92.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FIFTH CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL

93.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 92 with the same force as though separately alleged herein.

94.     The NYCHRL prohibits employers from, among other things, discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race and/or actual or perceived disability.

95.     Defendant unlawfully terminated Plaintiff because of her race and disability.

96.     As a direct and proximate consequence of Defendant's race and disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

97.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
**Failure to Provide a Reasonable Accommodation in Violation of the NYCHRL**

98.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 97 with the same force as though separately alleged herein.

99.     The NYCHRL mandates that an employer engage in an interactive process to provide a reasonable accommodation for an employee's disability.

100.     Defendant repeatedly refused Plaintiff's requests for reasonable accommodations, and, in fact, retaliated against her for making such requests.

101.     As a direct and proximate consequence of Defendant's failure to provide a reasonable accommodation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

102.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SEVENTH CAUSE OF ACTION
**Retaliation in Violation of the NYCHRL**

103.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 102 with the same force as though separately alleged herein.

104.     The NYCHRL prohibits employers from retaliating against any employee for complaining of discriminatory practices illegal under the NYCHRL.

105.   Plaintiff properly complained to Defendant about discriminatory comments and conduct to which she was subjected based on her race and disability.

106.   Defendant retaliated against Plaintiff by, *inter alia,* subjecting her to further offensive comments and harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating her employment.

107.   As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

108.   Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## EIGHTH CAUSE OF ACTION

**Prohibited Transactions of Plan Assets, in Violation of ERISA, 29 U.S.C. § 1106**

109.   Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 108 with the same force as though separately alleged herein.

110.   Defendant violated ERISA when it repeatedly withdrew more than it deposited into Plaintiff's retirement, flexible spending, dependent care, and transit accounts.

111.   Defendant, a corporation, was Plaintiff's employer and acted directly as an employer in relation to an employee benefit plan.

112.   Defendant exercises discretionary authority or discretionary control respecting management of covered plans or exercises authority or control respecting management or disposition of its assets.

113.   The retirement account is a private sector retirement account.

114.   As such, the retirement account is an "employee pension benefit plan."

115.　The flexible spending account is an account used to pay for certain out-of-pocket health care costs.

116.　The dependent care account is an account used to pay for an employee's eligible expenses related to caring for their children, disabled spouse, elderly parent, or other dependent who is physically or mentally incapable of self-care.

117.　As such, flexible spending accounts and dependent care accounts constitute employee welfare benefit plans under ERISA, as they provide medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

118.　The transit account is an account created to use to pay employee commuter costs.

119.　As such, the transit account is an "employee benefit plan."

120.　As a direct and proximate cause of Defendant's illegal conduct, Plaintiff has been denied wages and employment benefits, and has suffered actual monetary losses.

121.　Plaintiff is entitled to compensatory damages, disgorged profits obtained by the fiduciaries through the breach of duty, and any other damages and compensation that the Court deems appropriate.

**NINTH CAUSE OF ACTION**
**Breach of Fiduciary Duty, in Violation of ERISA, 29 U.S.C. § 1104**

122.　Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 121 with the same force as though separately alleged herein.

123.　Defendant violated ERISA when it repeatedly withdrew more from Plaintiff's paycheck than it deposited into Plaintiff's retirement, flexible spending, dependent care, and transit accounts.

124.     Defendant is a fiduciary under ERISA.

125.     Defendant, a corporation, was Plaintiff's employer and acted directly as an employer in relation to an employee benefit plan.

126.     Defendant exercises discretionary authority or discretionary control respecting management of covered plans or exercises authority or control respecting management or disposition of its assets.

127.     The retirement account is a private sector retirement account.

128.     As such, the retirement account is an "employee pension benefit plan."

129.     The flexible spending account is an account used to pay for certain out-of-pocket health care costs.

130.     The dependent care account is an account used to pay for an employee's eligible expenses related to caring for their children, disabled spouse, elderly parent, or other dependent who is physically or mentally incapable of self-care.

131.     As such, flexible spending accounts and dependent care accounts are employee welfare benefit plans under ERISA, as they provide medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

132.     The transit account is an account created to use to pay transit costs.

133.     As such, the transit account is an "employee benefit plan."

134.     As a direct and proximate cause of Defendant's illegal conduct, Plaintiff has been denied wages, salary, and employment benefits, and has suffered actual monetary losses.

135.    Plaintiff is entitled to compensatory damages, disgorged profits obtained by the fiduciaries through the breach of duty, and any other damages and compensation that the Court deems appropriate.

## TENTH CAUSE OF ACTION
### Conversion

136.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 135 with the same force as though separately alleged herein.

137.    Defendant converted Plaintiff's property when it repeatedly withdrew more than it deposited into Plaintiff's retirement, Flexible Spending, dependent care, and transit accounts.

138.    Plaintiff owns or has the right to possess the amounts allocated to her as wages, then withheld to deposit in employer plans or accounts.

139.    Defendant intentionally interfered with Plaintiff's property by withholding monies from her wages and not depositing them into the appropriate accounts; Defendant had an obligation to return or otherwise treat in a particular manner the monies withheld, namely to deposit them in the appropriate accounts.

140.    Breaking Ground deprived Plaintiff of possession or use of this property.

141.    As a direct and proximate cause of Breaking Ground's illegal conduct, Plaintiff has been denied wages.

142.    Plaintiff is entitled to economic and punitive damages, interest, and any other damages and compensation that the Court deems appropriate.

## ELEVENTH CAUSE OF ACTION
### Breach of Contract

143.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 142 with the same force as though separately alleged herein.

144.     Defendant was obligated to compensate Plaintiff according to the terms of Plaintiff's employment contract.

145.     Defendant violated its contractual obligations to Plaintiff when it failed to pay Plaintiff for her accrued vacation time.

146.     As a result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer economic losses.

**Request for Relief**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.      For the first claim, damages to be determined at trial;

B.      For the second claim, damages to be determined at trial;

C.      For the third claim, damages to be determined at trial;

D.      For the fourth claim, damages to be determined at trial;

E.      For the fifth claim, damages to be determined at trial;

F.      For the sixth claim, damages to be determined at trial;

G.      For the seventh claim, damages to be determined at trial;

H.      For the eighth claim, damages to be determined at trial;

I.      For the ninth claim, damages to be determined at trial;

J.      For the tenth claim, damages to be determined at trial;

K.      For the eleventh claim, damages to be determined at trial;

L.      An award of compensatory, assumed, and punitive damages;

M.      Pre-judgment and post-judgment interest;

N.      Attorneys' fees and costs; and

O.      For such other and further relief as the Court deems just and proper.

[SIGNATURE ON FOLLOWING PAGE]

Dated:     New York, New York
           August 15, 2016

By:  _____

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com
*Attorneys for Plaintiff*